**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PRIMED, INC.,

       Petitioner,

v.                                      Case No. 8:11-cv-02002-VMC-AEP

DALLAS GENERAL LIFE INSURANCE
COMPANY and JEFFERSON LIFE
INSURANCE COMPANY,

       Respondents.

_____/

### PETITIONER PRIMED, INC.'S MOTION FOR SUMMARY JUDGMENT

       Petitioner, PriMed, Inc. ("PriMed"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56(c) and 9 U.S.C. § 9, moves for the entry of summary judgment in its favor as to its Petition to Confirm Arbitration Award against Respondents, Dallas General Life Insurance Company ("Dallas General") and Jefferson Life Insurance Company ("Jefferson Life") (collectively, "Respondents"), because there is no genuine issue of material fact and PriMed is entitled to judgment as a matter of law.  In support thereof, PriMed states as follows:

### MEMORANDUM OF LAW

**I.     FACTUAL BACKGROUND**

       1.     On or about November 1, 2003, PriMed and Dallas General entered into an Agreement.  (Doc. 1,[1] ¶ 7 and Exhibit #1 thereto; Doc. 14,[2] ¶ 7).

       2.     On or about January 26, 2006, the parties executed an Addendum to the Agreement.  (Doc. 1, ¶ 8 and Exhibit #1 thereto; Doc. 14, ¶ 8).  Pursuant to this Addendum,

---

[1] PriMed's Petition to Confirm Arbitration Award

[2] Respondents' Answer and Affirmative Defenses

Jefferson Life assumed the ongoing obligations of Dallas General. (Doc. 1, ¶ 8 and Exhibit #1 thereto).

3.        PriMed initiated an arbitration proceeding in Tampa, Florida against Dallas General and Jefferson Life in which PriMed claimed that Dallas General and Jefferson Life had breached the Agreement. (Doc. 1, ¶ 10; Doc. 14, ¶ 10); (Exhibit A).

4.        The Arbitrator entered a Pre-Arbitration Conference Stipulation and Order that, *inter alia*, reflected that the parties stipulated to have the Arbitrator issue a "reasoned award" as the form of the arbitration award. (Exhibit B, ¶ 40).

5.        No objection was made concerning the appointment of the Arbitrator or his jurisdiction.[3] (Doc. 1, ¶ 21; Doc. 14, ¶ 21).

6.        The issue of liability was arbitrated before a single Arbitrator in Tampa, Florida on October 15 and 16, 2009 as to liability and on June 18, 2010 as to damages. (Doc. 1, ¶ 11; Doc. 14, ¶ 11).

7.        On March 19, 2010, the Arbitrator entered an Order on Liability Phase of Arbitration Hearing. (Doc. 1, ¶ 12 and Exhibit #3 thereto; Doc. 14, ¶ 12).

8.        In the Order on Liability Phase of Arbitration Hearing, the Arbitrator found that both Dallas General and Jefferson Life had breached the Agreement. Respondents did not object to the form of the Order on Liability Phase of Arbitration Hearing. (Doc. 1, ¶ 13).

9.        On June 30, 2011, the Arbitrator entered an Arbitration Award as to Damages. (Doc. 1, ¶ 14 and Exhibit #4 thereto; Doc. 14, ¶ 14).

---

[3] The parties initially agreed to the appointment of Cary R. Singletary, Esquire as Arbitrator. At the time of his appointment, Mr. Singletary made a disclosure of matters that he had recently mediated or was scheduled to mediate for PriMed's counsel, Shutts & Bowen LLP. On May 28, 2008, Mr. Singletary made an updated disclosure. Only after the updated disclosure, and just two weeks before the Arbitration was to begin, did Respondents object to Mr. Singletary serving as Arbitrator. Thereafter, Mr. Singletary withdrew as Arbitrator, and the Arbitration, originally scheduled to begin on June 12 and 13, 2008, did not commence until October 15, 2009, resulting in a 16 month delay. (Exhibits C, D, E, and F).

10. In reaction to the Arbitration Award as to Damages, on July 22, 2011, Respondents filed a Motion for Clarification of Damage Award that claimed that the Arbitrator's award did not "rise to the level of a 'reasoned' opinion." (Doc. 1, ¶ 15 and Exhibit #5 thereto; Doc. 14, ¶ 15).

11. In response, on August 1, 2011, Petitioner provided the Arbitrator with authority from the United States Court of Appeals, Eleventh Circuit, Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 842 (11th Cir.2011), that demonstrated that the Arbitration Award as to Damages was indeed a reasoned award. (Doc. 1, ¶ 16 and Exhibit #6 thereto; Doc. 14, ¶ 16).

12. On August 24, 2011, the Arbitrator stated that he had reviewed numerous items and concluded that there was no evident miscalculation of figures and that the award was not imperfect as to form. (Doc. 1, ¶ 17 and Exhibit #7 thereto; Doc. 14, ¶ 17).

13. Accordingly, that same day, the Arbitrator entered an Amended Arbitration Award as to Damages. (Doc. 1, ¶ 18 and Exhibit #8 thereto; Doc. 14, ¶ 18).

14. In the Amended Arbitration Award as to Damages, the Arbitrator found that PriMed was entitled to damages from Dallas General in the amount of $1,374,937.00, said damages having been established by the greater weight of the evidence. The Arbitrator further found that PriMed was entitled to prejudgment interest against Dallas General in the amount of $504,846.73. (Doc. 1, ¶ 19 and Exhibit #8 thereto; Doc. 14, ¶ 19). The only difference between the Arbitration Award as to Damages and the Amended Arbitration Award as to Damages was to specifically calculate the amount of prejudgment interest owed by Dallas General.

15. The Arbitrator further found that PriMed was entitled to damages from Jefferson Life in the amount of $3,365,100.00, said damages having been established by the greater weight of the evidence. (Doc. 1, ¶ 20 and Exhibit #8 thereto; Doc. 14, ¶ 20).

16.     Accordingly, on or about September 1, 2011, PriMed filed its Petition to Confirm the Arbitration Award.  (Doc. 1).  In its Petition, PriMed requested that this Court enter an Order confirming the Order on Liability Phase of Hearing entered on March 19, 2010 as well as the Amended Award as to Damages entered on August 24, 2011, enter judgment against Dallas General in the amount of $1,879,783.70 and against Jefferson Life in the amount of $3,365,100.00, and award prejudgment interest from August 24, 2011 through the entry of judgment.[4]  (Doc. 1).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir.1996), citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir.1993).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods,

---

[4]Prejudgment interest is, of course, properly awarded in this case.  As this Court has stated:

> In a diversity case, the Court follows state law governing prejudgment interest.  SEB, S.A. v. Sunbeam Corp., 476 F.3d 1317, 1320 (11th Cir.2007).  Under Florida law, a prevailing plaintiff is entitled to prejudgment interest, at the statutory rate, from the date of the loss to the date of judgment.  Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 572 (11th Cir.1991).  In the absence of a contractually agreed rate, the statutory rate of prejudgment interest in Florida is set by the state's Chief Financial Officer.  Compare Fla. Stat. § 687.01 (2006) with Fla. Stat. § 55.03 (2006).

PK Motors, Inc. v. Page, 3:06-CV-693-J-33MMH, 2003 WL 25570794 (M.D.Fla.2003) (Covington, J.).

Inc., 121 F.3d 642, 646 (11th Cir.1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir.2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-594 (11th Cir.1995), citing Celotex, 477 U.S. at 324.

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir.2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir.1988), citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir.1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir.1981).

Applying these principles to the undisputed and indisputable facts at bar entitles PriMed to summary judgment against Dallas General and Jefferson Life.

## III.    THE ARBITRATION AWARD SHOULD BE CONFIRMED

### A.    The Federal Arbitration Act, Not the Florida Arbitration Code, Controls the Determination of this Action Because the Transaction Between the Parties Involves Interstate Commerce

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., controls this Court's review of the arbitration award.  9 U.S.C. §§ 1, 2; Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc., 625 F.2d 22, 25 (5th Cir.1980)[5] (the FAA controls in an action to enforce the arbitration provision of a contract in interstate commerce, where (as here) the parties to the contract are from different states, and performance necessarily entailed interstate commerce).  Respondents erroneously argue that the Florida Arbitration Code, Ch. 682, Fla. Stat., should govern this action.

The Federal Arbitration Act provides for the enforceability of "[a] written provision in .... a contract evidencing a transaction involving commerce...."  Id., quoting 9 U.S.C. § 2. The federal language "signals an intent to exercise Congress' commerce power to the full."  Id., quoting Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); see also Picard v. Credit Solutions, Inc., 564 F.3d 1249, 1253 (11th Cir.2009), quoting Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003) (citing Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987) (the FAA "provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.'").  Thus, the Federal Arbitration Act applies if the transaction involves "interstate commerce, even if the parties did not contemplate an interstate commerce connection."  Rewards Hotel Mgmt., 860 So.2d at 1013, quoting Allied-Bruce Terminix, 513 U.S. at 277, 115 S.Ct. at 834.  Moreover, the term "interstate commerce" is to be interpreted

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

broadly.  Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC, 59 So.3d 1173, 1175 (Fla. 4th DCA 2011).

For example, in Eastern Funding, L.L.C. v. Roman, 882 So.2d 1059, 1061 (Fla. 4th DCA 2004), Eastern Funding was a Delaware corporation with its primary place of business in New York.  Roman, however, operated out of Florida.  Id. at 1061.  Likewise, the monthly rent payments in that case were to be mailed from Florida across state lines to New York.  Id.  Additionally, all correspondence whether by mail or telephone occurred across state lines.  Id.  The Eastern Holding court held "that the Federal Arbitration Act is applicable as the Lease Agreement involves interstate commerce."  Id.  Even certain agreements executed in the same state in which the parties to the contract were also residents have been found to reflect an interstate commerce transaction.  See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (debt-restructuring agreements that were executed in Alabama by Alabama residents were nonetheless contracts evidencing transactions "involving commerce," whose arbitration clauses were enforceable pursuant to provision of the FAA, given that one of parties to the contracts had engaged in business throughout the southeastern United States using loans renegotiated and redocumented in debt-restructuring agreements, given that restructured debt was secured by inventory assembled from out-of-state parts and raw materials, and given the broad impact of commercial lending on the national economy).  Finally, where, as here, insurers conduct business across state lines, they engage in interstate commerce.  Prescott Architects, Inc. v. Lexington Ins. Co., 638 F.Supp.2d 1317, 1320 (N.D.Fla.2009), citing United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 552-553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).

Respondents contend that because the Agreement contains a choice of law provision specifying Florida law, the Florida Arbitration Code should control. However, <u>Rewards Hotel Mgmt. Co., LLC v. Elite Gen. Contractors, Inc.</u>, 860 So.2d 1011, 1013 (Fla. 3d DCA 2003) dealt with and dispensed of this argument:

> The first issue is whether the Federal Arbitration Act applies here, or the Florida Arbitration Code. NHRC argues that the Federal Act applies because the contract involves commerce within the meaning of the Federal Act and the cases construing it. Rewards Hotel Management argues that the Florida Act applies because the contract contains a choice of law provision specifying Florida law. NHRC is correct.

In <u>Rewards Hotel Mgmt.</u>, a portion of the transaction at issue included the importation of furniture from Hong Kong, which that court found necessarily meant the shipment of goods in foreign and interstate commerce. <u>Rewards Hotel Mgmt.</u>, 860 So.2d at 1013. As such, the court found that the contract fit the federal definition of a "transaction involving commerce...." <u>Id.</u>, <u>quoting in part</u> 9 U.S.C. § 2. Accordingly, the choice of law provision in the Agreement does not determine which arbitration act governs this action; rather, it is whether the transaction between the parties to this dispute involves interstate commerce. Because the transaction between PriMed and Respondents unquestionably involves interstate commerce, the FAA applies.

The instant case reflects similar facts demonstrating a transaction involving interstate commerce. 9 U.S.C. § 2. As PriMed alleges in its Petition (Doc. 1, ¶¶ 1-3), and as Respondents admit in their Answer and Affirmative Defenses (Doc. 14, ¶¶ 1-3), PriMed is a Nevada corporation with its principal place of business in Florida, while Respondents are Texas corporations with their principal places of business in Texas. Respondents further admit that there is complete diversity of citizenship between the parties. (Doc. 1, ¶ 4; Doc. 14, ¶ 4). These undisputed facts, standing alone, *prima facie* demonstrate that any transaction between PriMed

and these Respondents would necessarily involve interstate commerce. A review of the transaction created by the Agreement only strengthens this conclusion. The Agreement requires communication and the exchange of information and documentation between the parties, as well as payment to PriMed. (Doc. 1, Exhibit #1 thereto, § 1(b)-(d) and § 2(b)-(c)). Given the citizenship and residences of the respective entities, these actions by their very nature must have involved interstate commerce. In light of this reality, the testimony adduced in the Arbitration demonstrates that the extensive communications between the parties necessarily involved interstate commerce:

```
15        Q.    Did you ever receive a call from anyone from
16  PriMed?
17        A.    I did.
18        Q.    And who did you receive the call from?
19        A.    Ed called me.
20        Q.    For the record, when you say Ed --
21        A.    Ed Thomas.
22        Q.    -- are you referring to Mr. Thomas?
23        A.    Uh-huh.
24        Q.    Tell me the scope or the extent of that
25  telephone conversation.
```

```
1      A.      It was brief.  I remember he called me and he
2   said, I've been on vacation a couple of weeks and I come
3   back -- he said, There must be something wrong with this
4   deposit.  I've been on vacation a couple of weeks and I've
5   come back and it's much smaller than it should be.
6      Q.      And what did you tell him?
7      A.      I told him that we had given the option to our
8   policyholders to either keep or not to keep the PriMed
9   product and that most had opted not to.
10     Q.      What happened after you made that statement?
11     A.      I don't remember.  I remember it was a short
12  conversation.
```

(Exhibit H, P:322, L:15 – P:323, L:12); see also (Exhibit G, P:77, L:13-23, P:81, L:3 – P:82, L:24, P:167, L:19-25); (Exhibit H, P:322, L:15 – P:323, L:12, P:324, L:14-25, P:394, L:13-21).

The existence of interstate commerce in the instant matter is further reflected in the relationship between PriMed and an entity known as Best Benefits.  As background, Dallas General sought out PriMed, to provide a health care discount program designed to allow persons in need of medical care to choose from thousands of primary care physicians and specialists to receive services at a discounted rate.  Instead of contracting with physicians and setting up a physician network on its own, PriMed made an agreement with Best Benefits to provide the physician network.  In doing so, PriMed's representative flew to Chicago to negotiate with Best Benefits at their headquarters.  During the course of their relationship, PriMed and Best Benefits exchanged correspondence, electronic mail, and payments.  Because all of the interactions and transactions between PriMed and Best Benefits occurred across state lines, and because the relationship between PriMed and Best Benefits was a key component of the transaction between PriMed and Respondents, interstate commerce is implicated.  (Exhibit G, P:74, L:18 – P:75, L:6; P:137, L:8 – P:138, L:19; P:224, L:23 – P:225, L:20)

Interpreting "interstate commerce" broadly, <u>Mintz & Fraade</u>, <u>supra</u>, the Agreement and the Addendum thereto reflect that the transaction between PriMed and Respondents indisputably involves interstate commerce. Thus, the Federal Arbitration Act applies, and controls to the extent of any inconsistency with Florida law. <u>Rewards Hotel Mgmt.</u>, 860 So.2d at 1014.

## B.     The FAA Overwhelmingly Favors Confirming Arbitration Awards

The procedure for confirming an arbitration award under the FAA is:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. The Eleventh Circuit has stated that the FAA imposes a heavy presumption in favor of confirming arbitration awards. <u>Cat Charter</u>, 646 F.3d at 842 (citations and internal quotation marks omitted). Accordingly, a court's confirmation of an arbitration award is usually routine or summary. <u>Id.</u>

It is well-settled that judicial review of an arbitration award is narrowly limited. <u>Davis v. Prudential Sec., Inc.</u>, 59 F.3d 1186, 1190 (11th Cir.1995). As such, federal courts should defer to an arbitrator's decision whenever possible. <u>Frazier v. CitiFinancial Corp., LLC</u>, 604 F.3d 1313, 1321 (11th Cir.2010), <u>quoting</u> in <u>part</u> <u>B.L. Harbert Int'l, LLC v. Hercules Steel Co.</u>, 441 F.3d 905, 909 (11th Cir.2006), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Frazier</u>, 604 F.3d at 1323. In other words, arbitrators "do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." <u>Cat Charter</u>, 646 F.3d at 842-843, <u>quoting</u> <u>National Wrecking Co. v. Int'l Bd. of Teamsters, Local 731</u>, 990 F.2d 957, 960 (7th Cir.1993). Indeed, the Supreme Court has read the applicable provisions of the FAA, §§ 9–11,

> as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process.

Cat Charter, 646 F.3d at 845, quoting Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 588, 128 S.Ct. 1396, 1405, 170 L.Ed.2d 254 (2008) (citations and internal quotation marks omitted). In making its position in support of this national policy quite clear, the Eleventh Circuit has warned that parties opposed confirmation of an arbitration award at their peril if they attempted to go outside the limited review provided by the FAA, putting litigants on notice that Rule 11 sanctions would be warranted in such circumstances. See Hercules Steel, 441 F.3d at 914.

Because the FAA overwhelmingly favors confirming arbitration awards, and because the FAA greatly constrains their judicial review, the confirmation of the arbitration award in this case should occur in a summary fashion. A proceeding to confirm an arbitration award should be routine. It should not provide losing parties with an opportunity to relitigate the entire dispute. Such a tactic would run afoul of the FAA and its intent.

C. **Because None of the FAA's Statutory Exceptions Apply, the Arbitration Award Must be Confirmed**

None of the narrow statutory exceptions to confirming an arbitration award apply here, and because the statutory exceptions provide the sole bases for vacating or modifying this arbitration award, it must be confirmed. As a threshold matter, the Eleventh Circuit has declared that the exclusive grounds for vacating or modifying an arbitration award are statutory. Frazier, 604 F.3d at 1324, citing Hall Street Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396,

170 L.Ed.2d 254 (2008)[6]; see also 9 U.S.C. § 10(a) (providing the four narrow grounds upon which a district court may vacate an arbitration award) and 9 U.S.C. § 11 (providing the three narrow grounds upon which a district court may modify or correct an arbitration award). Of course, undergirding these limited exceptions is the strong presumption in favor of confirming arbitration awards. See Frazier, supra.

It is clear that none of the FAA's exceptions provide a basis for either vacating or modifying the instant arbitration award. In any event, Respondents raised only one objection in the arbitration below. Respondents claimed that the Arbitration Award as to Damages did not "rise to the level of a 'reasoned' opinion."[7] (Doc. 1, ¶ 15 and Exhibit #5 thereto). However, the Arbitrator considered and rejected this "reasoned award" objection. (Doc. 1, ¶ 17 and Exhibit #7 thereto). Most importantly, the Eleventh Circuit's recent Cat Charter decision establishes that the Arbitrator's written decision based upon a weighing of the evidence constitutes a "reasoned award." Because Cat Charter so completely obviates Respondents' lone objection, the arbitration award must be confirmed.

In Cat Charter, the plaintiffs agreed to pay the defendants to construct a boat known as the *Magic*. Cat Charter, 646 F.3d at 839. However, relations between the parties soured, and the defendants never delivered the boat, despite receiving roughly $2 million. Id. As a result, the parties entered into binding arbitration pursuant to their written agreement, with the plaintiffs asserting claims including breach of contract. Id. During the preliminary stages of the arbitration, the arbitration panel decided that the form of the arbitration award would be

---

[6] The Eleventh Circuit's declaration in Frazier that the Hall Street decision means that statutory exceptions, and not judicially or contractually created exceptions, are the sole grounds on which to vacate or modify an arbitration award, was the basis for the partial abrogation of Hercules Steel. Otherwise, Hercules Steel remains valid and binding law.

[7] As previously noted, Respondents never objected to the form of the Order on Liability Phase of Arbitration Hearing, which was similar in form to the Arbitration Award as to Damages.

determined by agreement of the parties.  Id. at 840.  Ultimately, the parties agreed to have the arbitration panel provide a "*reasoned award*."  Id. (emphasis added).  Following discovery, a hearing, and post-trial briefing, the arbitrators unanimously stated that the plaintiffs had proven their claims "*by the greater weight of the evidence*."  Id. at 840-841 (emphasis added).

On appeal, the question presented to the Eleventh Circuit was whether the arbitrators "exceeded their powers" – thereby justifying vacatur of the arbitration award under 9 U.S.C. § 10(a)(4)[8] – when the arbitrators purportedly failed to provide a "reasoned award" as agreed to by the parties.  Id. at 839.  The district court held that they had and therefore vacated the award.  Id.  The appellate court disagreed and reversed.[9]  Id.

The Eleventh Circuit held that the arbitrators' decision survived scrutiny under § 10(a)(4).  The court found that the context of the arbitrators' statements and the fact that the award provided detailed reasons regarding the claims was sufficient, because the arbitrators' statement that " '[o]n the claim of the [Plaintiffs] … for breach of contract … we find that [Plaintiff] … has proven its claim against [Defendants] by the greater weight of the evidence' is easily understood to mean that, in the swearing match between the Plaintiffs and the Defendants, the Panel found the Plaintiffs' witnesses to be more credible."  Id. at 844-845.  Indeed, the Eleventh Circuit "certainly cannot say that this statement is devoid of any statements offered as a justification; the reason for the Plaintiffs' victory is plainly provided."  Id. at 845.  The court

---

[8] Section 10(a)(4) permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

[9] In considering the appeal, the Eleventh Circuit noted:

> If this court were to affirm the district court's order, the parties would be required to begin a new arbitration proceeding before a new panel in order to settle the controversy surrounding the *Magic*. In other words, the district court determined that the Award was so deficient that it warranted sending the parties back to square one, ostensibly granting the Defendants a second bite at the apple because of a perceived technical defect in the form of the Award.

Cat Charter, 646 F.3d at 842.

ruled that the arbitrators' statement that the plaintiffs had proven their claim "by the greater weight of the evidence" "is greater than what is required in a 'standard award,' and that is all we need decide." Id. at 845. In concluding, the Eleventh Circuit offered this summary of its reasoning:

> In the present case, three validly-appointed arbitrators oversaw a five-day hearing and rendered a thoughtful, reasoned award. We decline to narrowly interpret what constitutes a reasoned award to overturn an otherwise apparently seamless proceeding. The parties received precisely what they bargained for—a speedy, fair resolution of a discrete controversy by an impartial panel of arbitrators skilled in the relevant areas of the law. To vacate the Award and remand for an entirely new proceeding would insufficiently respect the value of arbitration and inject the courts further into the arbitration process than Congress has mandated. As such, the Award should be confirmed and this controversy should be put to rest once and for all.

Id. at 845-846.

Because the facts and issues in this case are the same as those in Cat Charter, the result should be the same as well. As in Cat Charter, PriMed asserted a claim for breach of contract. As in Cat Charter, the parties agreed to have the arbitrator provide a "reasoned award." And as in Cat Charter, following discovery, hearings, and post-hearing briefing, the Arbitrator found that PriMed had proven its claims "by the greater weight of the evidence."

Finally, though they raised the argument about the supposed lack of a reasoned award to the Arbitrator, Respondents have failed to raise this issue as a defense to PriMed's Petition to Confirm Arbitration Award. Given that Respondents are well aware of this supposed defense, but have failed to raise it in this proceeding (perhaps in light of the holdings in Cat Charter and Hercules Steel), they have now abandoned it.

Because the Arbitrator's Award clearly constitutes a reasoned award under controlling precedent, this Court should confirm it.

**D.     Respondents' Illegality Defense, Which was Hotly Litigated Before the Arbitrator, was for the Arbitrator, and Not this Court, to Decide Under Controlling Law**

Respondents contend that this action to confirm the arbitration award in favor of PriMed "is barred due to the doctrine of illegality."[10] (Doc. 14, Third Defense). This defense fails for two key reasons under binding precedent of both the Supreme Court and the Eleventh Circuit. First, because the allegation of illegality goes to the entirety of the Agreement, rather than the Agreement's arbitration provision, it is a defense for determination by the Arbitrator – not this Court. Second, Respondents raised and vigorously litigated this illegality defense in the arbitration – the Arbitrator simply and correctly ruled against them. Because this defense fails under controlling law, and because this defense is simply an attempt to relitigate the entire dispute in contravention of the mandates of Cat Charter and Hercules Steel, this Court should disregard it and confirm the Arbitration Award.

**1.     The Arbitrator, Rather than this Court, Decides Whether the Agreement was Illegal**

First, under the FAA, a written arbitration provision is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868 (11th Cir.2005), quoting 9 U.S.C. § 2. This language has been interpreted to mean that "[t]he FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally

---

[10] Respondents' entire Third Defense states:

> This action is barred due to the doctrine of illegality. PriMed's arbitration award was based on a breach of a contract. However, the contract between the parties was illegal and thus cannot be enforced or form the basis of an arbitration award. Pursuant to Florida law, any entity that intends to transact business in Florida as a "discount medical plan organization" must be licensed by the Office of Insurance Regulation. The PriMed discount physician program is a discount medical plan, but PriMed did not hold a license with the Florida Office of Insurance Regulation during the period at issue in the arbitration award. The Arbitration Award awards damages to PriMed against the respondents because they failed to enroll members [in] PriMed's insurance programs. The Arbitration Award must be vacated because it was illegal for PriMed to sell the respondents a discount medical plan period without a license.

and not arbitration agreements specifically." Jenkins, 400 F.3d at 875, quoting Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir.2002) (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996)). The Supreme Court has recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Jenkins, 400 F.3d at 875, quoting Doctor's Assocs., 517 U.S. at 687, 116 S.Ct. at 1656.

In support of their illegality defense, Respondents will likely, but incorrectly, rely upon 9 U.S.C. § 2, because, before considering the merits of the illegality argument, this Court "must first decide whether this issue is one for an arbitrator or a court to resolve. Jenkins, 400 F.3d at 876. Indeed, in interpreting this section of the FAA, the Supreme Court has distinguished between claims that challenge the contract generally and claims that challenge the arbitration provision itself. Jenkins, 400 F.3d at 876, citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. ---, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403, quoting in part Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("There are two types of validity challenges under § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'").

Both the Supreme Court and the Eleventh Circuit have expressly addressed the issue of whether a court or an arbitrator should decide whether a contract is illegal and therefore void *ab initio*. Buckeye, 546 U.S.at 442, 126 S.Ct. at 1207 ("We decide whether a court or an arbitrator

should consider the claim that a contract containing an arbitration provision is void for illegality."); Jenkins, 400 F.3d at 880-881.  Using language that is directly on point, the Eleventh Circuit stated that "'allegations of illegality go to the … transactions generally, and not to the arbitration agreement specifically.'  Therefore, an arbitrator, and not a federal court, should determine whether the underlying transactions are illegal and void."  Jenkins, 400 F.3d at 881, quoting in part Bess v. Check Express, 294 F.3d 1298, 1305-1306 (11th Cir.2002) (applying Prima Paint); Buckeye, 546 U.S. at 449, 126 S.Ct. at 1211 ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); see also Rent-A-Center, West, 130 S.Ct. at 2779.

In a case with facts parallel to those at bar, the Eleventh Circuit once again held that the arbitrator decides the issue of the unenforceability of a contract.  John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1096-1097 (11th Cir.2003).  In Goodman, the appellees brought suit, but the appellants moved the district court for an order compelling arbitration in accordance with arbitration clauses contained within construction contracts.  Id. at 1095.  In opposing the motion, the appellee argued that the contracts were unenforceable, not because appellee failed to assent to the essential terms of the contracts, but because the method of performance (i.e., that the construction contracts were performed in part by an unlicensed contractor) rendered the contracts, and the arbitration clauses within the contracts, unenforceable under § 489.128, Fla. Stat.[11]  Id. at 1095-1096.  The Eleventh Circuit concluded that, under both

---

[11] The version of § 489.128, Fla. Stat. in effect when the Goodman court ruled read as follows:

> As a matter of public policy, contracts entered into on or after October 1, 1990, and performed in full or in part by any contractor who fails to obtain or maintain a license in accordance with this part shall be unenforceable in law or in equity.

the Federal Arbitration Act, once the district court is satisfied that the parties actually agreed to arbitrate the dispute, it is for the arbitrator, not the district court, to determine whether the underlying contracts in general were enforceable under § 489.128, Fla. Stat. Id. at 1095. The Goodman court noted that, "[a]t bottom, appellee challenges the *performance* of the contracts, not their *existence*. There is no question about appellee's assent to the contracts generally or the arbitration clauses specifically. … Therefore, the issue raised by appellee – whether the construction contract generally was unenforceable under Florida law because the contract was performed in part by an unlicensed contractor – is one for the arbitration panel, not the district court." Id. at 1096-1097 (emphasis in original); Bess, 294 F.3d at 1305-1306 (same). So too here.

This controlling case law is clear – Respondents' illegality defense was a matter for the consideration of the Arbitrator. Having been rejected by the Arbitrator, this defense does not create a genuine issue of material fact that would preclude summary judgment.

> **2.** **Respondents Litigated – and Lost – Their Illegality Defense in the Arbitration, and Cannot Relitigate this Defense in this Court**

Though it is clearly not for this Court to decide, Respondents now attempt to once again utilize a defense that failed in the arbitration. The record from the arbitration shows that the legality of the Agreement was hotly and thoroughly litigated in that proceeding:

```
11        Now, at the last hearing, if you may recall --
12    and I've got the transcript here.  I know you probably
13    recall it -- one issue that we had to deal with was the
14    fact that PriMed, Best Benefits, and I believe
15    Coverdell wasn't licensed in Florida for a particular
16    time.  You stopped us at the hearing.  You didn't want
17    to hear that testimony at the time, out of concern it
18    may prejudice you, and said we will revisit that at a
19    later date.  I think that date is now.
```

(Exhibit I, P:438, L:11-19).

```
4     2006.  There is no cure provision in the statute.  So
5     if they weren't licensed at the time they were selling
6     this product, the product couldn't have been sold.  And
7     one of the things that he raised was this notion that
8     if we continue to append this product to the Value Med
9     policy and it was illegal, then Dallas General, later
10    Jefferson Life, must have also been acting illegally.
11    That's not the issue.  It's not the product that's the
12    issue with respect to illegality.  The illegality is
13    the failure to license.  So the contracts may not be
14    enforceable, but that doesn't necessarily mean that any
15    liability extends to Dallas General or Jefferson Life,
16    but what was required was that the Petitioner be
17    licensed by the State.  And if you look at the
```

(Exhibit G, P:56, L:4-17); see also (Exhibit G, P:55, L:22 – P:57, L:2; Exhibit G, P:230, L:16 –
P:233, L:6; Exhibit H, P:296, L:21 – P:306, L:5; Exhibit G, at 16-18).  That this defense did not
prevail in the Arbitration does not provide Respondents with any basis to raise it here.

Furthermore, by attempting to raise a defense to confirmation not included among the
FAA's narrow exceptions to confirmation, and because Respondents are simply trying to
relitigate the illegality issue, Respondents ignore the admonitions of the Eleventh Circuit.

Hercules Steel, supra. The purpose of an action to confirm an arbitration award is not to provide the non-prevailing party with a "do-over" – such would defeat the purpose and efficient nature of arbitration. The parties presented extensive argument regarding the legality of the Agreement. After consideration of this and other issues, the Arbitrator found in favor of PriMed "by the greater weight of the evidence." Because that finding is entitled to extraordinary deference, and because no exception applies, this Court should confirm the Arbitrator's Award.

## IV.    CONCLUSION

Based on the foregoing, PriMed respectfully requests:

(a)    An Order Confirming the Order on Liability Phase of Hearing entered on March 19, 2010 as well as the Amended Award as to Damages entered on August 24, 2011;

(b)    Entry of judgment against Dallas General in the amount of $1,879,783.70 and against Jefferson Life in the amount of $3,365,100.00, which may be enforced as any other judgment;

(c)    The award of prejudgment interest from August 24, 2011 through the entry of judgment; and

(d)    Such other and further relief as this Court deems proper.

Respectfully submitted,


/s/ John E. Johnson
JOHN E. JOHNSON
Florida Bar No. 593000
jjohnson@shutts.com
MICHAEL P. SILVER
Florida Bar No. 868701
msilver@shutts.com
SHUTTS & BOWEN LLP
4301 West Boy Scout Boulevard, Suite 300
Tampa, Florida 33607
Telephone:   (813) 229-8900
Facsimile:    (813) 229-8901
Attorneys for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.


/s/ John E. Johnson
Attorney

TPADOCS 18977277 8