**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PRIMED, INC.,

      Petitioner,

v.                                     Case No. 8:11-cv-02002-VMC-AEP

DALLAS GENERAL LIFE INSURANCE
COMPANY and JEFFERSON LIFE
INSURANCE COMPANY,

      Respondents.

_____/

**PETITIONER PRIMED, INC.'S RESPONSE**
**TO RESPONDENTS' MOTION TO VACATE THE ARBITRATION AWARD**

      Petitioner, PriMed, Inc. ("PriMed"), by and through undersigned counsel, files this its

Response to Motion to Vacate the Arbitration Award (Doc. 22) of Respondents, Dallas General

Life Insurance Company ("Dallas General") and Jefferson Life Insurance Company ("Jefferson

Life") (collectively, "Respondents"), and states as follows:

**MEMORANDUM OF LAW**

      Respondents' attempt to vacate the underlying arbitration award is yet another delay.

The Eleventh Circuit has made its views crystal clear when discussing the disturbing propensity

of parties who, having lost in arbitration, seek to use the district court as a forum to relitigate the

dispute:

> When a party who loses an arbitration award assumes a never-say-die attitude and
> drags the dispute through the court system without an objectively reasonable
> belief it will prevail, the promise of arbitration is broken.  Arbitration's allure is
> dependent upon the arbitrator being the last decision maker in all but the most
> unusual cases.  The more cases there are, like this one, in which the arbitrator is
> only the first stop along the way, the less arbitration there will be.  If arbitration is
> to be a meaningful alternative to litigation, the parties must be able to trust that
> the arbitrator's decision will be honored sooner instead of later.

> [T]his court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards.  The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases.  While [the losing party] and its counsel did not have the benefit of this notice and warning, those who pursue similar litigation positions in the future will.

B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913-914 (11th Cir.2006).  In their attempt to relitigate the merits of the dispute, Respondents ignore the admonitions of the Eleventh Circuit.  This Court should deny the requested vacatur and confirm the arbitration award.

I.    **The McCarran-Ferguson Act does not reverse preempt the Federal Arbitration Act in Florida, and § 626.903, Fla. Stat. is of no moment.**

    A.    **Florida does not have any statutes that forbid arbitration of insurance-related disputes, and therefore the McCarran-Fergsuon Act does not reverse preempt the Federal Arbitration Act.**

Respondents contend, in language seemingly borrowed from McKnight v. Chicago Title Ins. Co., Inc., 358 F.3d 854 (11th Cir.2004), that at issue here is the intersection of several statutes – either the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et al. or the Florida Arbitration Code (the "FAC"), Ch. 682, Fla. Stat., together with the McCarran-Ferguson Act (the "MFA"), 15 U.S.C. §§ 1011-1015, and, in this case, § 626.903, Fla. Stat. Id. at 856, (Doc. 22, at p. 8).  But Respondents' conclusion as to this issue, which lacks any analysis of the relevant factors, is deeply flawed.

The Eleventh Circuit in McKnight analyzed three factors: (1) the federal rule, that arbitration provisions in contracts involving interstate commerce will be enforced, generally preempts state law to the contrary; (2) the exception to this rule, found in the MFA, 15 U.S.C. §

1012(b)[1], which leaves the regulation of the insurance industry to the states, and (3) whether the state law – in this case, § 626.903, Fla. Stat. – falls into the general rule or the exception that the MFA sometimes provides.  McKnight, 358 F.3d at 856-857.  "**In the right circumstances**, the MFA provides an exception to the general rule of arbitration under the FAA."  Id. at 857 (emphasis added).  "If the state [i.e., Florida] **has an anti-arbitration law enacted for the purpose of regulating the business of insurance**, and if enforcing, pursuant to the FAA, an arbitration clause would invalidate, impair, or supersede that state law, a court should refuse to enforce the arbitration clause."  Id. (emphasis added), citing Standard Sec. Life Ins. Co. of New York v. West, 267 F.3d 821, 823 (8th Cir.2001) (stating and applying this exception).  Though Respondents cite McKnight, this analysis from that case is conspicuously absent from Respondents' argument.  When this analysis is performed, though, it results in the inescapable finding that the MFA does not inversely preempt the FAA.

Respondents concede that the Agreement between the parties involves interstate commerce, and the FAA does not itself specifically relate to the business of insurance.  Accordingly, this Court must next look at whether the circumstances here are "the right circumstances" that would permit the MFA to provide an exception to the general rule of arbitration under the FAA.  Quite simply, "the right circumstances" do not exist here.  The exception that the MFA provides, as it relates to the FAA, would exist only if Florida has an anti-arbitration law enacted for the purpose of regulating the business of insurance.  McKnight and West, supra.

The MFA bars application of the FAA in this case only if (1) the FAA does not specifically relate to the business of insurance, (2) the Florida legislature has enacted laws

---

[1] "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance ..."

regulating the business of insurance; and (3) the FAA's application invalidates, impairs, or supersedes the state statute.  Mayard-Paul v. The Mega Life & Health Ins. Co., 2001 WL 1711519, at 2 (S.D.Fla.2001); see also Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1220 (11th Cir.2001).  Respondents' argument fails on the third prong.  Florida has not enacted a statute barring arbitration of insurance claims, and because there is therefore no conflict between the FAA and Florida statutory law with respect to the arbitration of an insurance matter, this Court cannot find that the MFA inversely preempts the FAA.  Mayard-Paul, 2001 WL 1711519, at 3; see also Prescott Architects, Inc. v. Lexington Ins. Co., 638 F.Supp.2d 1317, 1322 (N.D.Fla.2009) (same); Kong v. Allied Professionals Ins. Co., 2008 WL 2853677, at 3 (M.D.Fla.2008) (same); Flach v. Clarendon Nat. Ins. Co., 2004 WL 5042294, at 1, n.1 (M.D.Fla.2004) (same).

Both Love v. Money Tree, Inc., 614 S.E.2d 47, 48-50 (Ga.2005), and Lawson v. Life of the South Ins. Co., 2010 WL 1416551, at 2-5 (M.D.Ga.2010), involved a Georgia statute OCGA § 9-9-2(c)(3), that prohibited arbitration regarding contracts of insurance.  The outcomes in Love and Lawson specifically arise from the existence of a Georgia statute; thus, these cases are factually inapposite.  Florida does not have a statute barring arbitration of insurance disputes, supra, and Respondents do not so contend.  To the contrary, arbitration provisions are present throughout the Florida Insurance Code.  See, e.g., §§ 627.736, 631.206, 651.123, Fla. Stat.

Sections 626.903 and 636.244, the statutes upon which Respondents base their argument, have no relationship with or connection to the arbitration of insurance disputes.  Instead, as Respondents point out, the statutes address discount medical plan organizations and their ability to maintain certain actions.  As a result, the FAA does not invalidate, impair, or supersede or

supersede these statutes, because the subject matter of these statutes does not bar the resolution of the disputed issue in arbitration, rather than in court.

Moreover, Respondents' argument regarding reverse preemption, when logically extended, leads to illogical results. Respondents contend that because § 626.903 is an insurance-related statute, the MFA reverse preempts the FAA in litigation involving this Florida statute. But that argument would mean that because Florida has enacted statutes dealing with insurance, *no* insurance dispute in Florida could be arbitrated under the FAA, based on the reverse preemption power of the MFA. Without a doubt, and as legions of cases allowing the arbitration of insurance disputes under the FAA confirm, this is not the law. The MFA precludes federal regulation of the insurance industry. It does not preclude a federal procedural framework that can be applied to a vast range of disputes, including insurance disputes. Moreover, if Respondents' argument was the law, an insurance dispute could not be litigated under the Federal Rules of Civil Procedure, simply due to the existence of an insurance statute in Florida and the MFA. Of course, this is not the case. Respondents' reverse preemption argument fails.

**B. Respondents' argument that PriMed could not have brought this action in Florida was for the determination of the Arbitrator, not this Court, under the FAA, but in any event, the argument fails.**

Respondents next argue that § 626.903, Fla. Stat. prohibited PriMed from bringing the arbitration in Florida. For numerous reasons, this argument also fails. First, this argument is essentially another form of Respondents' argument that the Agreement is illegal. As demonstrated herein, <u>infra</u>, that is an issue for the *arbitrator* to decide, not the Court. Moreover, the parties agree that this issue was vigorously litigated in the arbitration. But because the arbitrator decides this issue, this Court may not address it. That the arbitrator decided this argument against Respondents is not grounds for raising it here.

Second, while this issue is not properly before this Court, the record from the arbitration below clearly demonstrates that the discount medical cards were marketed and sold in *Texas*, not Florida, and so the Florida statute would not apply.  See (Exhibit A, P:30, L:10-22, P:31, L:8-14, P:121, L:18-24); (Exhibit B, P:625, L:10-17).   A company does not need to be licensed in *Florida* to operate in the insurance industry in *Texas*.   Respondents and their counsel are well aware of the concept.

Dallas National Insurance Company ("Dallas National"), a Texas insurance company with its principal place of business in Dallas, is affiliated with Respondent Dallas General.  Both Dallas National and Dallas General share a common principal, Charles David Wood, Jr.  Dallas National has previously applied to the Florida Office of Insurance Regulation (the "OIR") for licensure as a property and casualty insurer in Florida.  On two occasions, the Commissioner of the OIR has denied Dallas National's application.  (Exhibit C).  Dallas National appealed this denial to Florida's First District Court of Appeal, which issued a *per curiam* affirmance. (Exhibit D).  Yet, Dallas National continues to operate as an insurer in Texas.  (Exhibit E). Clearly, Dallas General should be aware that a company need not be licensed in Florida to engage in the insurance business in Texas.

Moreover, this very issue was litigated in the arbitration.  PriMed made the point that Florida could not enforce payments on insurance policies sold outside Florida to residents of other states, but the State of Florida could look to out-of-state conduct to determine the fitness of an insurer to do business in Florida.  See Gerling Global Resinsurance Corp. of Amer. v. Gallagher, 267 F.3d 1228 (11th Cir.2001).  PriMed does not seek to reargue this point and in fact doing so would be improper.  Instead, PriMed seeks to show that Respondents are using this

Court to attempt to relitigate the matters resolved by the Arbitrator, which were hotly litigated. <u>See</u> (Exhibit F) and (Exhibit G).

> **C.     Because Respondents never objected to the jurisdiction of the Arbitrator until they lost the arbitration, they have waived that argument.**

By failing to object to the Arbitrator's exercise of jurisdiction, Respondents any purported objection.  <u>Della Penna v. Zabawa</u>, 931 So.2d 155, 164 (Fla. 5th DCA 2006).  An arbitrator's jurisdiction derives from the parties' agreement and can broaden during the course of arbitration "by waiver, failure to object and consent."  <u>Id.</u> at 164, quoting <u>LeNeve v. Via South Florida, L.L.C.</u>, 908 So.2d 530, 534-535 (Fla. 4th DCA 2005) (quoting <u>City of West Palm Beach v. Palm Beach County Police Benev. Ass'n</u>, 387 So.2d 533, 534 (Fla. 4th DCA 1980)); <u>see</u> <u>also</u> (Doc. 22, pg. 3) ("Arbitrators draw their power from the agreement of the parties to arbitrate."). Here, Respondents do not cite to anything demonstrating any objection to the jurisdiction of the Arbitrator below.  Nor do Respondents cite to a single case that permits a losing party that willingly participated in an arbitration to subsequently argue that the arbitrator did not possess the power to resolve the dispute.  Because they never objected, Respondents consented to the Arbitrator's jurisdiction, and they cannot now reasonably argue that the Arbitrator exceeded his powers.  <u>See</u> <u>Della Penna</u>, 931 So.2d at 160-161.

## II.     The Federal Arbitration Act controls the enforcement of the arbitration award.

> **A.     The existence of a Florida choice of law provision does not change the fact that the FAA and its substantive law dictate the determination of this dispute.**

Respondents argue without any legal, or logical support, to have the FAC govern this proceeding, claiming the FAC would give Respondents a broader menu of confirmation exceptions from which to choose.  The Court should disregard this meritless argument because the FAA clearly applies.

Respondents begin by stating that "The parties understood that Florida procedural law, and hence the FAC, governed the arbitration."   There is nothing factually accurate about the statement that the parties "understood" that the FAC governed the arbitration, and Respondents also fail to offer any law in support of it.   Respondents begin this erroneous argument by representing that the underlying Agreement expressly states "that the parties agreed to abide by the FAC." (Doc. 22, at 16).   This is a wholly false statement.   The Agreement, particularly § 19 thereof (the section to which Respondents cite in support of this argument), does not contain any mention of the FAC, let alone an agreement to abide by it.   Contrary to Respondents' assertion, the basis for the application of Florida law the arbitration was the choice of law provision in the Agreement, not any supposed "understanding of the parties."   Moreover, the Agreement specified that any dispute arising out of the Agreement was to "be resolved by arbitration in accordance with the procedures of the American Arbitration Association ("AAA")." Agreement, § 19(c).   The AAA's procedural rules are different than those under the FAC; for example, while depositions are freely permitted under AAA rules, depositions of witnesses "are matters of grace and are not compelled by the FAC." U.S. Fid. & Guar. Co. v. Romay, 744 So.2d 467, 471 n.4 (Fla. 3d DCA 1999); see also § 682.08, Fla. Stat.

A choice of law provision has no impact upon the applicability of the substantive enforcement provisions of the Federal Arbitration Act, either generally or to this dispute.   To begin, the FAA provides for the enforceability of "[a] written provision in .... a contract evidencing a transaction involving commerce...." Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc., 625 F.2d 22, 25 (5th Cir.1980)[2] quoting 9 U.S.C. § 2. The federal language "signals an intent to exercise Congress' commerce power to the full." Id., quoting Allied-Bruce

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); see also Picard v. Credit Solutions, Inc., 564 F.3d 1249, 1253 (11th Cir.2009), quoting Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003) (citing Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987) (the FAA "provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.'"). Moreover, the term "interstate commerce" is to be interpreted broadly.  Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC, 59 So.3d 1173, 1175 (Fla. 4th DCA 2011).

Respondents grudgingly acknowledge the overwhelmingly well-established principal that the FAA governs arbitrations arising from transactions involving interstate commerce.  (Doc. 22, pg. 17).  However, Respondents then contend that this "general principle is inapplicable because of the parties' mutual understanding … that Florida's procedural law applied."  (Doc. 22, pgs. 17-18).  Contrary to Respondents' caveat, though, the FAA applies if the transaction involves "interstate commerce, even if the parties did not contemplate an interstate commerce connection."  Rewards Hotel Mgmt. Co., LLC v. Elite Gen. Contractors, Inc., 860 So.2d 1011, 1013 (Fla. 3d DCA 2003), quoting Allied-Bruce Terminix, 513 U.S. at 277, 115 S.Ct. at 834.

Nevertheless, Respondents make a leap of legal logic by arguing that because the parties agreed to a Florida choice of law provision in the Agreement, and because of a citation to Florida substantive law by PriMed in the arbitration itself, the Florida Arbitration Code controls the enforcement of the arbitration award.  This conclusion flies in the face of established law, even absent the parties' express agreement to use the AAA rules.

In Hialeah Auto., LLC v. Basulto, 22 So.3d 586 (Fla. 3d DCA 2009), a case involving the sale of an automobile, the parties executed an arbitration agreement that called for the arbitration

of any dispute concerning the sale of the vehicle, regardless of the theory of liability asserted.  Id. at 588.  Notably, this arbitration agreement contained a Florida choice of law provision.  Id.

The Hialeah Auto. court began its analysis with the settled proposition that where, as was the case there, the parties execute an arbitration agreement in a transaction involving interstate commerce, the FAA is implicated.  Id. at 589, citing Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 474-479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); see also Preston v. Ferrer, 552 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999).  Parties are allowed to choose state law for "the rules under which ... arbitration will be conducted." Volt, 489 U.S. at 479, and by contractually agreeing upon a Florida choice of law, the parties in Hialeah Auto. thereby specified that the **procedures** of the FAC were applicable to the transaction at issue there.  Hialeah Auto., 22 So.3d at 589 (emphasis added).  While this is certainly permissible, such arbitration agreements "**must still be *enforced in a way which is consistent with the *substantive* provisions of the FAA.*" Id. (emphasis added).

Similarly, in Rewards Hotel Mgmt, the issue was whether the FAA or the FAC applied, where there was a contract involving interstate commerce and a choice of law provision specifying Florida law.  Rewards Hotel Mgmt., 860 So.2d at 1013.  The court held that the FAA controlled.  Id.  Again, the existence of interstate commerce, rather than a Florida choice of law provision, determines whether the federal or the Florida act applies.[3]

There is no dispute that the transaction between PriMed and Respondents involved interstate commerce.  There is no dispute that the subject Agreement contains a Florida choice of

---

[3] PriMed cited and discussed Rewards Hotel Mgmt. in its Motion for Summary Judgment (Doc. 16).  Conspicuously absent from Respondents' Response to the Motion for Summary Judgment, as well as their Motion to Vacate, is any mention or contradiction of Rewards Hotel Mgmt.

law provision.  There is no dispute that this action seeks to enforce the arbitration award.  In light

of these undisputed facts, there is no dispute that the FAA governs this enforcement action,

despite the presence of the Florida choice of law provision.  The holdings of both <u>Hialeah Auto.</u>

and <u>Rewards Hotel Mgmt.</u> require this result.

>B.     **The Federal Arbitration Act applies regardless of whether PriMed had filed this confirmation action in federal or state court.**

Respondents also rely on the fact that PriMed filed this action to confirm the arbitration

award in federal court, rather than state court.  Respondents insinuate that by suing in federal

court, PriMed can thereby rely upon the federal, rather than state, arbitration act, and thereby

limit Respondents solely to the FAA's statutory grounds for vacatur, as required by the Eleventh

Circuit's decision in <u>Frazier v. CitiFinancial Corp., LLC</u>, 604 F.3d 1313, 1324 (11th Cir.2010).

(Doc. 22, pg. 17).  However, this argument overlooks the Supreme Court's decision in <u>Southland</u>

<u>Corp. v. Keating</u>, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), which held that Congress

intended the substantive provisions of the FAA to apply in state courts, and to preempt state anti-

arbitration laws to the contrary.  <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 122, 121 S.Ct.

1302, 1313, 149 L.Ed.2d 234 (2001).[4]  As such, the substantive resolution of this matter, whether

in state or federal court, is governed by the FAA.

>C.     **The <u>Jupiter</u> decision, which involved no interstate commerce, was not decided under the substantive enforcement provisions of the Federal Arbitration Act, and it is therefore inapplicable.**

---

[4] Moreover, PriMed could not have even sued in federal court under the FAA without an independent jurisdictional basis.  It is a long-accepted principle that the FAA is non-jurisdictional, meaning that the statute does not itself supply a basis for federal jurisdiction over FAA petitions.  <u>Community State Bank v. Strong</u>, 651 F.3d 1241, 1252 (11th Cir.2011).  Therefore, the parties must identify an independent basis for federal jurisdiction over a petition to compel arbitration brought pursuant to the FAA.  <u>Id.</u> at 1252.  In this case, the parties have indeed indentified an independent basis for federal jurisdiction – PriMed has alleged, and Respondents have admitted, that diversity jurisdiction exists under 28 U.S.C. § 1332.

Obviously, Respondents hope to persuade this Court that the FAC applies so that they may inappropriately attempt to reargue the issue of illegality of the subject Agreement (a basis for vacatur that Respondents apparently concede[5] does not exist under the FAA based on the holding of <u>Frazier</u>) in an effort to rely upon the recently issued opinion in <u>Jupiter Med. Ctr., Inc. v. Visiting Nurse Ass'n of Fla., Inc.</u>, 72 So.3d 184 (Fla. 4th DCA 2011).  Respondents' reliance on <u>Jupiter</u> is misplaced because both the factual circumstances, and therefore the applicable law, are entirely different from those at bar.

Critically, there is not one mention of the FAA in <u>Jupiter</u>, nor does that case reflect that the transaction between the litigants involved interstate commerce in any way.[6]  Accordingly, the FAA would not apply in such a circumstance, which stands in stark contrast to the transaction between PriMed and Respondents.   Instead, <u>Jupiter</u> was decided under the substantive enforcement provisions of the FAC and Florida law.  But, because the FAA so clearly governs the confirmation of the arbitration award here (and the FAC so clearly does not), neither <u>Jupiter's</u> analysis nor its holding impacts the confirmation of PriMed's arbitration award.   Indeed, as <u>Hialeah Auto.</u> shows, arbitration agreements in interstate commerce transactions must be enforced consistent with the *substantive* provisions of FAA, even when parties have agreed to a contractual Florida choice of law provision.  Moreover, because <u>Jupiter</u> was decided under the FAC rather than the FAA, its holding is limited to **state courts** applying the FAC.  <u>See id.</u> at 185 ("**Florida courts** should not enforce an arbitrator's award based on an illegal contract") (emphasis added).  <u>Jupiter</u> is factually inapposite, and therefore inapplicable.

---

[5] Respondents nonetheless attempt to create confusion by implying that <u>Frazier</u> did not really resolve grounds for vacatur under FAA in Eleventh Circuit.  <u>See</u> Section III of Respondents' Motion to Vacate the Arbitration Award.

[6] The amount of the arbitration award in <u>Jupiter</u> greatly exceeded the sum of $75,000.00.  Since the court in <u>Jupiter</u> noted that the initial federal court petition to confirm the award was dismissed for lack of subject matter jurisdiction, <u>id.</u> at 185, it is most likely that the dispute over the purchase of a community hospital in Jupiter, Florida did not involve *inter*state commerce, but instead was a dispute between Florida residents of an *intra*state nature.

As PriMed previously discussed in its Motion for Summary Judgment, under the FAA, the arbitrator, and not a court, decides whether a contract is illegal.  Before considering the merits of the illegality argument, a court must first decide whether this issue is one for an arbitrator or a court to resolve.  Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 876 (11th Cir.2005).  Indeed, in interpreting this section of the FAA, the Supreme Court has distinguished between claims that challenge the contract generally and claims that challenge the arbitration provision itself.  Jenkins, 400 F.3d at 876, citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. ---, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403, quoting in part Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("There are two types of validity challenges under § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'").

Both the Supreme Court and the Eleventh Circuit have expressly addressed the issue of whether a court or an arbitrator should decide whether a contract is illegal and therefore void *ab initio*.  Buckeye, 546 U.S.at 442, 126 S.Ct. at 1207 ("We decide whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality."); Jenkins, 400 F.3d at 880-881.  The Eleventh Circuit stated that "'allegations of illegality go to the … transactions generally, and not to the arbitration agreement specifically.' Therefore, an arbitrator, and not a federal court, should determine whether the underlying transactions are illegal and void." Jenkins, 400 F.3d at 881, quoting in part Bess v. Check

Express, 294 F.3d 1298, 1305-1306 (11th Cir.2002) (applying Prima Paint); Buckeye, 546 U.S. at 449, 126 S.Ct. at 1211 ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); see also Rent-A-Center, West, 130 S.Ct. at 2779.  The Florida Supreme Court recently reiterated these principles, noting that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance," and that this arbitration law applies in state as well as federal courts.  Shotts v. OP Winter Haven, Inc., --- So.3d ----, 2011 WL 5864830, at 6 (Fla., Nov. 23, 2011), quoting Buckeye, 546 U.S. at 445-446, 126 S.Ct. at 1209.[7]

Nowhere have Respondents suggested that the arbitration provision of the Agreement is illegal.  Rather, Respondents (erroneously) contend that the subject matter of the transaction is illegal under the Florida Insurance Code.  This alleged illegality goes to the heart of the transaction and the performance of the Agreement.  Under such circumstances, the arbitrator, rather than this Court, properly decided the issue of illegality.  See  John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095 (11th Cir.2003) (under the Federal Arbitration Act, once the district court is satisfied that the parties actually agreed to arbitrate the dispute, it is for the arbitrator, not the district court, to determine whether the underlying contracts in general were enforceable under state statutes).  Finally, by raising their illegality argument again before this tribunal after unsuccessfully litigating it before the arbitrator, Respondents ignore the Eleventh Circuit's clear admonitions against using the district court to relitigate substantive

---

[7] The Florida Supreme Court also reiterated that, "In Florida, an arbitration clause in a contract involving interstate commerce is subject to the FAC, to the extent the FAC is not in conflict with the FAA."  Shotts v. OP Winter Haven, Inc., --- So.3d ----, 2011 WL 5864830, at 6 (Fla., Nov. 23, 2011).

issues already resolved by the arbitrator.   See Hercules Steel, supra[8]; Cat Charter, LLC v. Schurtenberger, 646 F.3d 836 (11th Cir.2011).

### III. Manifest disregard is not longer a valid basis for vacatur, but even if it was still legitimate, the circumstances of this case would not justify the application of that extremely high standard.

Respondents acknowledge that their final argument is contrary to controlling case law. Relying on an exception to confirmation of an arbitration award that is **no longer good law**, Respondents seek to relitigate the alleged illegality of the Agreement by arguing that the arbitrator acted in manifest disregard of the law.   The Court should give this argument short shrift.

As Respondents concede, Frazier eliminated all non-statutory grounds for vacatur under the FAA in the Eleventh Circuit.   Frazier, 604 F.3d at 1324, citing Hall Street Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).   Nevertheless, using the thinly veiled qualifier that they raise this argument solely for subsequent Eleventh *Circuit en banc* review, Respondents invite this Court to decline to confirm the arbitration award under the manifest disregard basis.   Because manifest disregard for the law is not a statutory basis for vacatur under 9 U.S.C. § 10(a), the Court should decline this invitation.

Even if, *arguendo*, the manifest disregard exception was still valid (which it is not), Respondents are wrong on the issue.   Before it was eliminated as a basis for vacatur, in order to vacate an arbitration award solely on the contention that the arbitrator acted in manifest disregard of the law, there must have been clear evidence that the arbitrator was "conscious of the law and

---

[8]   The laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest. If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less. This case is a good example of the poor loser problem and it provides us with an opportunity to discuss a potential solution.

Hercules Steel, 441 F.3d at 907.

deliberately ignore[d] it." <u>Hercules Steel</u>, 441 F.3d at 910.  A showing that the arbitrator merely

misinterpreted, misstated, or misapplied the law was insufficient.  <u>Id.</u>  The Eleventh Circuit first

adopted manifest disregard for the law as a basis for challenging an arbitration award in <u>Montes

v. Shearson Lehman Bros., Inc.</u>, 128 F.3d 1456, 1461 (11th Cir.1997).  <u>Hercules Steel</u>, 441 F.3d

at 910.  As the Eleventh Circuit noted in <u>Hercules Steel</u>, <u>Montes</u> "remains the only case in which

we have ever found the exceptional circumstances that satisfy the exacting requirements of this

exception." <u>Id.</u>

In holding that the arbitrators had acted in manifest disregard of the law in <u>Montes</u>, the

Eleventh Circuit disavowed any notion that an arbitrator's decision "can be reviewed on the basis

that its conclusion or reasoning is legally erroneous." <u>Id.</u> at 911, <u>quoting</u> <u>Montes</u>, 128 F.3d at

1461; <u>accord</u>, <u>Montes</u>, 128 F.3d at 1460 ("This does not mean that arbitrators can be reversed for

errors or misinterpretations of law.").  Additionally, the Eleventh Circuit in <u>Montes</u> emphasized

the rare nature of the circumstances in that case.  <u>Hercules Steel</u>, 441 F.3d at 911.  As the

<u>Hercules Steel</u> court noted, "[f]our facts came together in <u>Montes</u> and will seldom recur:

> Those facts are that: 1) the party who obtained the favorable award had conceded
> to the arbitration panel that its position was not supported by the law, which
> required a different result, and had urged the panel not to follow the law; 2) that
> blatant appeal to disregard the law was explicitly noted in the arbitration panel's
> award; 3) neither in the award itself nor anywhere else in the record is there any
> indication that the panel disapproved or rejected the suggestion that it rule
> contrary to law; and 4) the evidence to support the award is at best marginal.

<u>Id.</u>, <u>quoting</u> <u>Montes</u>, 128 F.3d at 1464 (Carnes, J., concurring).  While <u>Montes</u> showed the

exception, the rule was shown in every other case where the Eleventh Circuit decided if the

arbitration loser had established manifest disregard of the law.  <u>Hercules Steel</u>, 441 F.3d at 911.

In all of those other cases, the loser in arbitration was the loser in the Eleventh Circuit's decision.

<u>Id.</u> (citations omitted).

As in <u>Hercules Steel</u>, the facts of the instant case do not come within shouting distance of the <u>Montes</u> exception.  <u>Id.</u>  As in <u>Hercules Steel</u>, this was a typical contractual dispute in which the parties disagreed about the meaning of the terms of their Agreement.  <u>Id.</u>  As in <u>Hercules Steel</u>, there were arguments to be made on both sides of the contractual interpretation issue, and they were made to the arbitrator before being made to the district court.  <u>Id.</u>  As in <u>Hercules Steel</u>, there is no evidence that the attorney for PriMed urged the arbitrator to disregard the law, and Respondents do not even suggest that happened.  <u>Id.</u> at 913.  As in <u>Hercules Steel</u>, there is no evidence that the arbitrator decided the dispute on the basis of anything other than his best judgment – whether right or wrong – of how the law applies to the facts of the case.  <u>Id.</u>  And, as in <u>Hercules Steel</u>, even if this Court were convinced that it would have decided this contractual dispute differently, that would not be nearly enough to set aside the award under the manifest disregard standard.  <u>Id.</u> at 911 (citations omitted).  To quote the Eleventh Circuit,

> There is, in short, no evidence that the arbitrator manifestly disregarded the law. The only manifest disregard of the law evident in this case is Respondents' refusal to accept the law of this circuit which narrowly circumscribes judicial review of arbitration awards.  By attacking the arbitration award in this case [Respondents] ha[ve] has shown at best an indifference to the law of our circuit governing the subject.  [Respondents]' refusal to accept that there is no basis in the law for attacking the award has come at a cost to the party with whom [Respondents] entered into the arbitration agreement and to the judicial system.

<u>Id.</u> at 913.

**IV.     Conclusion.**

Judicial review of an arbitration award is narrowly limited, <u>Davis v. Prudential Sec., Inc.</u>, 59 F.3d 1186, 1190 (11th Cir.1995), and in this case Respondents raise no cogent arguments in support of vacatur under the FAA, which unquestionably applies here.  Accordingly, because the FAA imposes a heavy presumption in favor of confirming arbitration awards.  <u>Cat Charter</u>, 646

F.3d at 842, this Court should deny Respondents' Motion to Vacate, grant PriMed's Motion for Summary Judgment, and enter judgment in favor of PriMed.

Respectfully submitted,

/s/ Michael P. Silver
JOHN E. JOHNSON
Florida Bar No. 593000
jjohnson@shutts.com
MICHAEL P. SILVER
Florida Bar No. 868701
msilver@shutts.com
SHUTTS & BOWEN LLP
4301 West Boy Scout Boulevard, Suite 300
Tampa, Florida 33607
Telephone:   (813) 229-8900
Facsimile:   (813) 229-8901
Attorneys for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Michael P. Silver
Attorney

TPADOCS 19044809 1